ggc

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ) | |
| **WILLIAM BELLAMEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 10-2358-JAR** |
| ) | |
| **CERTAINTEED CORP.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

This is an employment discrimination case involving claims of age discrimination

brought pursuant to the Age Discrimination in Employment Act ("ADEA").[1]  This matter is

before the Court on defendant CertainTeed Corp.'s Motion for Summary Judgment (Doc. 41).

The motion is fully briefed and the Court is prepared to rule.  As described more fully below, the

Court grants defendant's motion for summary judgment.

### I.  Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or viewed in the light most

favorable to plaintiff.[2]

Plaintiff was born in 1942.  CertainTeed hired plaintiff on or about June 4, 1979, at the

age of 37, as a Pipe Plant Maintenance Superintendent in its Kansas City, Kansas ("KCK")

facility.  On or around September 10, 1979, CertainTeed promoted plaintiff to Maintenance

---

[1] 29 U.S.C. § 621 *et seq.*

[2] *See* Pretrial Order (Doc. 37); Defendant CertainTeed Corp.'s Memorandum of Support for its Motion for
Summary Judgment (Doc. 42); Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary
Judgment (Doc. 43); and Defendant CertainTeed's Reply to Plaintiff's Memorandum in Opposition to Defendant's
Motion for Summary Judgment (Doc. 44).

Manager.  In 1990, at the age of 48, plaintiff moved to a Senior Maintenance Supervisor position, working as the Facilities Engineer.  In this position, plaintiff was responsible for maintaining the physical facility including roof maintenance, painting, grounds keeping, and janitorial services.  Plaintiff was the only Facilities Engineer at the KCK plant, and none of the other CertainTeed insulation plants across the nation has a salaried position devoted to supervising maintenance of the facility's infrastructure, as typically these duties are combined with those of other salaried employees.

Starting in the fourth quarter of 2006, CertainTeed's business experienced a serious economic downturn, as the dearth in new housing reduced demand for insulation, forcing CertainTeed to cut production dramatically.  As a result, CertainTeed was forced to significantly reduce its hourly and salaried headcount.  CertainTeed had to reduce its salaried workforce by twelve employees as of April 2009.

Salaried personnel in the Production and Warehouse Departments were affected by the reductions in force ("RIFs") in 2007 and 2008, while salaried employees in the Engineering and Maintenance Department were not.  In 2009, CertainTeed's corporate headquarters directed the plant manager of the KCK plant to reduce the plant's salaried headcount by four.  Ron Rodvelt, who managed the Engineering and Maintenance Department at the time and had supervised plaintiff for the previous eight years, was told to reduce the head count by three salaried employees in the Engineering and Maintenance Department.  Mr. Rodvelt was given no instructions other than to cut the workforce in that department by three employees, based on his view of the future needs of the company.  He decided to reduce the salaried staff of the Engineering and Maintenance Department by three and the Warehouse by one.

2

As part of the April 2009 RIF, plaintiff's employment with CertainTeed ended on April 30, 2009, when he was 67-years-old.  At the time of plaintiff's termination, the Engineering and Maintenance Department consisted of the following employees, with those terminated shown in bold, and with their respective ages as of April 2009 in parentheses:

> **Senior Maintenance Supervisor Bill Bellamey (67)**
> **Senior Maintenance Supervisor Dave Copeland (56)**
> **Machine Designer Warren Webster (54)**
> Senior Maintenance Supervisor Noel Russell (60)
> Senior Maintenance Supervisor Garland "Pete" Slavens (58)
> Senior Maintenance Supervisor Dave Hetro (53)
> Project Engineer Tom Leeper (58)
> Electrical Engineer Sean Gokey (26)
> Senior Environmental Engineer Jim Eason (55)

Mr. Eason's job duties prior to the April 2009 RIF involved environmental regulations and providing reports on these issues.  Mr. Slavens' job duties prior to the April 2009 terminations were project based.  He was in charge of implementing a new packaging project, he was a millwright, and he machined parts.  Plaintiff filled in for Mr. Eason in the past and performed his duties on an interim basis.

 Mr. Rodvelt testified that he decided to terminate plaintiff because plaintiff could not perform Mr. Eason's job duties or Mr. Slavens' job duties.  The termination decision was not based on the employees' job performance or evaluations.[3]  Dave Stehly, defendant's Human Resources and Safety Manager, wrote a memo after talking to Mr. Rodvelt, detailing the reasons for the decisions.

Mr. Rodvelt testified that he decided to eliminate plaintiff's position and include him in

---

[3]Although plaintiff notes that the performance review numbers are listed on the Interoffice Memo from D. Stehly (Doc. 42-6) and that defendant attempts to raise prior alleged performance deficiencies, plaintiff acknowledges that "as defendant admits, these matters had nothing to do with the termination decision." (Doc. 43 at ¶ 14).

the RIF based on his belief that plaintiff's duties could be more easily assumed by other employees.  Specifically, plaintiff's job duties were initially divided as follows after the RIF:

a.  Senior Environmental Engineer Jim Eason was 55 years old when he assumed the majority of plaintiff's responsibilities, including those concerning the plant's cooling water/water treatment system, the fire system, and facilities other than the roof.  He did not need additional training to perform these additional tasks.

b.  Maintenance Supervisor Garland "Pete" Slavens was 58 years old when he assumed plaintiff's responsibilities concerning the warehouse and dock hardware.

c.  Senior Maintenance Supervisor Noel Russell was 60 years old when he assumed plaintiff's responsibilities concerning the roof and air cleaning equipment and supervising the plant's four janitors.

Mr. Rodvelt stated in his affidavit and testified that he did not believe that plaintiff could have performed the duties of Mr. Eason, Mr. Slavens, or Mr. Russell.  Specifically, Mr. Eason had decades of experience with environmental regulatory compliance, including over 30 with CertainTeed (one more than plaintiff's 29 years with the company).  Mr. Eason also earned a certificate in wastewater management and an Associates Degree in Science.  Plaintiff admitted that, other than giving daily paperwork to the environmental engineer at his former job and filling-in for Mr. Eason when he was on vacation, he had no background or formal education in environmental regulation and reporting.

In total, CertainTeed has reduced its salaried workforce by twelve employees between 2007 and 2009, in addition to eliminating the positions of two salaried employees after they retired in 2008.

Plaintiff bases his claim of age discrimination solely on the termination of his employment.  Plaintiff believes other employees—Mr. Eason, Mr. Slavens, Mr. Russell, Senior Maintenance Supervisor Dave Hetro, or Production Superintendent Don Roberts—should have been included in the RIF instead of him, for the following reasons:

a.  Regarding Mr. Eason (55-years-old at the time of the RIF), plaintiff stated "there was nothing Jimmy was doing that I couldn't have followed up on and done," though he does admit he would need additional training to perform Mr. Eason's job.

b.  Regarding Mr. Slavens (58-years-old at the time of the RIF), plaintiff believed that he had more experience on fiberglass equipment and was more dedicated to the company because Mr. Slavens had only worked for CertainTeed for three years.

c.  Regarding Mr. Russell (60-years-old at the time of the RIF), plaintiff acknowledged that he (Mr. Russell) was "as qualified" as plaintiff and "very dedicated to what he was doing," but said he should have been retained over Mr. Russell because he was "the senior employee."

d.  Regarding Mr. Hetro (53 years old at the time of the RIF), plaintiff felt he was the superior choice because "[m]ost of [Mr. Hetro's] time was in production," which "is a different mindset," unlike plaintiff, who was in Maintenance for his entire tenure with CertainTeed.

e.  Regarding Mr. Roberts (47-years-old at the time of the RIF), plaintiff claimed that, because he had held the same position as Mr. Roberts at one time, Mr. Roberts should have been part of the RIF instead, although Mr. Roberts was in charge of a completely different department (Production) at the time of the RIF, and therefore not subject to the RIF.

Three other salaried employees were part of the April 2009 RIF: Senior Maintenance Supervisor Dave Copeland (age 56 at the time of the RIF) and Machine Designer Warren

Webster (age 54 at the time of the RIF), both part of the Engineering and Maintenance Department, and Customer Service Manager Michael Warnesky (age 61 at the time of the RIF) of the Warehouse Department.  Plaintiff initially testified in his deposition that he also believed Mr. Copeland's inclusion in the RIF was age discrimination because he should have been retained over the employee who assumed his duties, Tom Leeper.  Mr. Leeper is actually older than Mr. Copeland.  Ultimately, after being informed that Mr. Leeper is actually older than Mr. Copeland, plaintiff testified he does not believe that the terminations of Mr. Copeland, Mr. Webster, or Mr. Warnesky were discriminatory.

Plaintiff admits that no CertainTeed manager ever made a comment or engaged in conduct (other than the termination) that he believed to be discriminatory based on his age, and he does not believe any of his supervisors treated him unfairly in any way (other than the termination).  When questioned about whom he believed was responsible for making the decision to include him in the RIF, plaintiff testified: "I really don't know.  I wish I did.  I don't think it was Dave [Stehly] or [Ron] Rodvelt but somebody did."  Later, plaintiff testified that the only people plaintiff believes discriminated against him were Ron Rodvelt and Human Resources and Safety Manager Dave Stehly, which he based solely on the fact that they facilitated the termination meeting.  However, plaintiff acknowledged neither Mr. Rodvelt nor Mr. Stehly had done or said anything suggesting they would discriminate against plaintiff based on age.  In fact, Plaintiff testified that Mr. Rodvelt was a "good supervisor" and that he did not have any problems with him.

## II.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[4] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[5]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[6]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[7]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[8]

Once the movant has met the initial burden of showing the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the

---

[4]Fed. R. Civ. P. 56(a).

[5]*City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[6]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[7]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[8]*Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[9]*Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002), *cert. denied* 537 U.S. 816 (2002) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[10]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

nonmovant."[11]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[12]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[13]  When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[14]

## III.  Discussion

Plaintiff claims that his termination pursuant to the RIF constituted age discrimination in violation of the ADEA.  Because there is no direct evidence of discrimination, the Court applies the burden-shifting analysis in *McDonnell Douglas Corp. v. Green*.[15]  Under the burden-shifting framework established in *McDonnell Douglas*, plaintiff carries the initial burden of establishing a prima facie case of age discrimination.[16]  If he can do so, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's actions; at that stage, a

---

[11]*Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 670-71); *see Kannady v. City of Kiowa,* 590 F.3d 1161, 1169 (10th Cir. 2010).

[12]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[13]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[14]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[15]411 U.S. 792, 802 (U.S. 1973).

[16]*Id.* at 802–05.

8

defendant is only required to provide a reason that is "not facially prohibited by the ADEA."[17] The burden then reverts back to plaintiff to establish that the employer's proffered reason for its actions were a mere pretext for discrimination.[18] "At this point, the presumption of discrimination established by the prima facie showing simply 'drops out of the picture,' and the analysis shifts to plaintiff's ultimate burden of showing that the defendant discriminated on the illegal basis of age."[19]

To establish a prima facie case of age discrimination in a RIF, plaintiff must show that: "(1) [he] was within a protected age group; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of his work; and (4) there is some evidence the employer intended to discriminate against him in reaching its RIF decision."[20]  The fourth element can be established "through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the [RIF]."[21]  The "burden of establishing a prima facie case . . . by a preponderance of the evidence" is "not onerous."[22]  Plaintiff has established a prima facie case.

Once Plaintiff meets this burden of establishing a prima facie case, defendant must then put forth a legitimate, nondiscriminatory reason for its decision.  Defendant asserts that plaintiff's duties could be more easily absorbed by other employees in the department,

---

[17]*MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1278 (10th Cir. 2005).

[18]*McDonnell Douglas,* 411 U.S. at 802.

[19]*Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1193 (10th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

[20]*Id.* at 1192 (citations omitted).

[21]*Id.* at 1193 (citing *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998), *cert. denied*, 525 U.S. 1054 (1998)).

[22]*Plotke v. White,* 405 F.3d 1092, 1099 (10th Cir. 2005) (citation omitted).

particularly Mr. Eason.  Defendant has shown a legitimate, nondiscriminatory reason for the employment decision.

Plaintiff must show that defendant's reason is a pretext for intentional discrimination. Pretext can be shown by pointing out "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[23]  In a RIF case, a plaintiff can demonstrate pretext by presenting evidence that: "(1) his own termination does not accord with the RIF criteria, (2) Defendant's RIF criteria were deliberately falsified or manipulated in order to terminate him, or (3) that the RIF generally was pretextual."[24]

Plaintiff argues that a reasonable jury could conclude that defendant's stated reasons for the employment decision are pretextual because there is evidence to cast doubt on defendant's stated reason for its decision to terminate plaintiff pursuant to the RIF.  Plaintiff points to his belief that he could have assumed the duties of other employees that were retained, albeit with extra training in some instances, and he points to the fact that he was described as "invaluable" and received positive performance evaluations.  In support of this argument, plaintiff has proffered his performance evaluations and cited cases where termination decisions were based on the employee's performance.  However, Mr. Rodvelt did not base his decision on plaintiff's performance reviews or on the performance of others.  Plaintiff held the position of Facilities Engineer, a position that no other CertainTeed plant had, and a position with duties that Rodvelt

---

[23]*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citations omitted).

[24]*Pippin,* 440 F.3d at 1193 (citing *Beaird,* 145 F.3d at 1168).

testified were easier to absorb than other salaried positions.  Plaintiff held a position comprised of duties that could be performed by other employees, while the duties of other salaried employees in the department, specifically Mr. Eason, Mr. Slavens, and Mr. Russell, could not be assumed by plaintiff.  Plaintiff acknowledged that he would need additional training to be able to perform the tasks of Mr. Eason, the Environmental Engineer who assumed the majority of plaintiff's duties.

Plaintiff argues that his testimony that he was able to perform Mr. Eason's job duties creates an issue of fact which a jury must ultimately determine.  Plaintiff further argues that the fact that he would have needed training does not change matters.  Plaintiff alleges that a factual dispute exists with regard to whether or not he could perform other employees' duties.  In support of this, plaintiff offers his own opinion and points to this testimony given by Mr. Rodvelt in his deposition:

> Q. (By Mr. Thornberry) If Mr. Bellamey does think he can do Mr. Eason's job, you would dispute that, right?
> A.  Yes.
> Q.  That would be an issue of fact you would have with Mr. Bellamey about whether or not Mr. Bellamey could do Mr. Eason's job.  Would you agree with that?
> Ms. Fowler: Objection, calls for a legal conclusion and speculation.
> You can answer if you can.
> A.  He might argue that, but I would disagree.
> Q.  (By Mr. Thornberry) That's an issue of fact–
> A.  Yes.[25]

---

[25]Doc. 43-2 at 7.

Mr. Rodvelt's testimony does not support plaintiff's argument, because a plaintiff's own conclusory opinions about his qualifications do not give rise to a material factual dispute.[26] Otherwise, summary judgment would never be appropriate in employment discrimination claims, because plaintiffs bringing such claims always feel that they should have retained their job, been promoted, or been hired instead of another candidate.  The real issue is whether the decision-maker had an honest belief that plaintiff was not qualified to take over the duties of another employee.[27]  "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."[28]  The plaintiff must call into question the honesty or good faith of the employer's assessment of his abilities.[29]  Plaintiff has not done that.  "It is not enough that a factfinder could disagree with the employer's assessments.  'The relevant inquiry is not whether [the defendant's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs."[30]

---

[26]*See Campbell v. Meredith Corp.*, 260 F. Supp. 2d 1087, 1106 (D. Kan.), *rev. denied*, 2003 WL 21302952 (D. Kan. 2003) ("Plaintiff's only evidence is his subjective belief that his termination was discriminatory.  Plaintiff's feeling that he has been the victim of discrimination fails to demonstrate a genuine issue of fact absent supporting evidence."); *Simms v. Oklahoma ex rel Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1329 (10th Cir. 1999), *cert. denied*, 528 U.S. 815 (1999) ("[A]n employee's own opinions about his . . . qualifications [do not] give rise to a material factual dispute.") (citation omitted); *Reese v. Owens-Corning Fiberglass Corp.*, 31 F. Supp. 2d 908, 916-17 (D. Kan. 1998) ("It is well settled that subjective beliefs of discrimination are not sufficient to defeat summary judgment.") (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1408 n.7 (10th Cir. 1997)).

[27]*Pippin*, 440 F.3d at 1196 ("Finally, although Pippin certainly thinks he was well qualified and a good performer, '[i]t is the perception of the decision maker which is relevant, not plaintiff's perception of [him]self.") (citation omitted).

[28]*Rivera v. City & County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004).

[29]*See Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1137 (10th Cir. 2004) ("Although Plaintiff obviously has his own opinion about his leadership and managerial skills, he has not demonstrated a genuine factual dispute about the genuineness of the USOC's assessment of his abilities.").

[30]*Id.* at 1138 (citations omitted).

Plaintiff further argues that defendant's decision was subjective with no standards, and such subjectivity lends additional support to plaintiff's pretext theory.  Plaintiff cites cases for the proposition that while subjective criteria alone is not considered evidence of pretext, the existence of other circumstantial evidence may provoke a stronger inference of discrimination in the context of subjective evaluation standards.[31]  Although plaintiff argues that the decision was subjective, no other CertainTeed plant had a position devoted to maintaining plant infrastructure, making the elimination of plaintiff's position in line with the structure in defendant's other plants.  Although plaintiff may argue that some other employee should have had their position eliminated instead of plaintiff's, "[j]udgments such as these are not, however, for this court to make, and the court will not second-guess the employer's judgment in a business decision."[32]

Plaintiff alleges that older employees fared worse than younger employees in the RIFs, thus showing a pattern of discrimination against older employees.  This argument is made despite the lack of a claim that the RIF was generally pretextual; plaintiff's admission that the RIF was necessitated by CertainTeed's genuine economic hardship; and plaintiff's testimony that he did not believe the other terminations occurring during the RIF were discriminatory.

In support of this argument, plaintiff submits three demonstrative exhibits that he claims show a pattern of discrimination against older employees.  None of the demonstrative exhibits is authenticated.  Plaintiff's Exhibit 7 purports to show the ages of all salaried employees listed by age as of April 2009 who were employed at any time since 2008 and lists all terminations and

---

[31]Plaintiff cites *Maughan v. Alaska Airlines, Inc.*, 281 F. App'x 803, 808 (10th Cir. 2008).

[32]*Myers v. Colgate-Palmolive Co.*, 102 F. Supp. 2d 1208, 1218 (D. Kan. 2000), *aff'd*, 26 F. App'x 855 (10th Cir. 2002) (rejecting plaintiff's argument that no restructuring was necessary, or that some other employee should have had his position eliminated).

resignations through April 2009.  Exhibit 8 purports to list by age on April 30, 2009, all employees who were terminated or resigned between January 2008 and April 30, 2009 with their ages as of termination.  Exhibit 9 purports to list by age on April 30, 2009, all employees employed since 2008 and shows terminations between January 2008 through 2010.  The exhibits show that of the 53 salaried employees, the median age was 50, with 26 employees older than 50 and 26 employees younger than 50.  Of the 26 older employees, 14 had been "terminated" through 2010, while only 8 of the younger 26 had been "terminated."

No inference of pretext arises from plaintiff's statistical evidence.  "While statistical evidence may create an inference of discrimination, the evidence may be so flawed as to render it insufficient."[33]  The court in *Myers* held that:

> 'A plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals.'
> . . . .
>
> Plaintiffs' statistical evidence is flawed because it fails to compare similarly situated individuals, and takes into account persons terminated by decision-makers other than the one who made the decision to terminate Myers.  Plaintiff's statistics group all employees together regardless of their specialty or skill and fail to take into account nondiscriminatory reasons for the numerical disparities, such as employees who may have voluntarily accepted layoff of other retirement packages that enhanced their benefits.[34]

Plaintiff's statistical evidence is likewise flawed.  Plaintiff's exhibits are not authenticated,[35] but even if the Court were to consider the material, plaintiff's statistics fail in

---

[33]*Id.* (noting that Myers had produced statistical evidence purportedly showing a correlation between age and discharge) (citation omitted).

[34]*Id.* at 1218-19 (citations omitted).

[35]*See Stevens v. Deluxe Fin. Serv., Inc.,* 199 F. Supp. 2d 1128, 1144 n.44 (D. Kan. 2002) ("The Court will disregard a summary judgment exhibit which plaintiff has failed to properly authenticate.").

several respects: they do not take into consideration all employees who were part of the RIF and do not distinguish between employees who were involuntarily terminated and those who chose to leave.  Defendant began reducing its salaried workforce because of economic conditions in 2007.  This data is not included.  Defendant's authenticated exhibit shows that of the fourteen "terminated" employees listed in plaintiff's exhibits, three retired voluntarily, one transferred to another CertainTeed plant, and two left for other employment opportunities.[36]  Defendant's exhibit also shows that the average age of all salaried employees at the end of 2006 (before the RIFs began) was 46.76 years old, while the average age at the end of 2010 was 46.78.[37]

Plaintiff argues that his evidence raises sufficient issues of fact if it is viewed in the aggregate.  In support of this argument, plaintiff argues that the following evidence should have a cumulative effect: evidence showing that defendant deliberately manipulated plaintiff's evaluation under its RIF criteria by falsely claiming that plaintiff was unable to perform Mr. Eason's work; statistical evidence that defendant's alleged RIF was generally pretextual, i.e., that its goal was to eliminate older employees; and plaintiff's evidence of strong performance. For the reasons set forth above, this proffered evidence is insufficient.

Plaintiff cannot show that defendant's legitimate, nondiscriminatory reason for eliminating his position is unworthy of credence.  Plaintiff has failed to offer any evidence that raises a genuine issue of material fact that defendant's decision was pretextual or otherwise had anything to do with age.  Plaintiff was not included in the RIF because he was a poor performer or because he was not a valued employee; he was included because his duties of supervising the

---

[36]Doc. 44-1 and 44-2 (Exs. H and I).

[37]Doc. 44-1.

maintenance of the plant's infrastructure could be more easily absorbed by other employees in the department (as is done in all of CertainTeed's other plants across the country).  The only evidence plaintiff advances of age discrimination is the fact that he was 67 years old and his subjective belief that he was "as qualified" or "more dedicated" or "could have been trained to do the job" of others who were not selected for the RIF.  Plaintiff's subjective beliefs cannot create a triable issue that CertainTeed's legitimate, non-discriminatory reason for its reduction decision was pretext for intentional age discrimination.  Even viewing all of the evidence cumulatively, and in the light most favorable to plaintiff as the non-movant, plaintiff is unable to raise a triable issue regarding pretext.  Because there is no material factual dispute, defendant is entitled to summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant CertainTeed Corp.'s Motion for Summary Judgment (Doc. 41) is GRANTED.

**IT IS SO ORDERED.**

**Dated: October 14, 2011**

 **S/ Julie A. Robinson**
**JULIE A. ROBINSON**
**UNITED STATES DISTRICT JUDGE**

16